Below is an Opinion of the Court.

_____
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

In Re:                              ) Bankruptcy Case
                                    ) No. 12-38626-rld12
LOVERIN RANCH,                      )
                                    ) MEMORANDUM OPINION
                   Debtor.          )

On May 13, 2013, I held an evidentiary hearing ("Hearing") on the Motion to Dismiss ("Motion") this chapter 12[1] case filed by Francis Carrington ("Carrington"). Following my review of the submissions filed by the debtor Loverin Ranch ("Loverin Ranch") and Carrington and the admitted exhibits, and hearing testimony and argument, I advised the parties that I intended to grant the Motion, but an order dismissing the case would be entered only after I prepared and entered a written opinion setting forth my findings of fact and conclusions of law.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules." The Oregon Revised Statutes are referred to as "ORS."

Page 1 - MEMORANDUM OPINION

This Memorandum Opinion sets forth the court's findings of fact and conclusions of law under Civil Rule 52(a), applicable with respect to this contested matter under Rules 7052 and 9014.

### Factual Background

This case was initiated by the filing of a chapter 12 petition on November 19, 2012.[2] The petition was signed in behalf of Loverin Ranch by Eulaina Lynne Loverin ("Lynne") as a "partner." Loverin Ranch filed its chapter 12 plan for reorganization of its affairs (the "Plan") on February 19, 2013 (Docket No. 11). A confirmation hearing was scheduled for April 1, 2013, at 1:30 pm (Docket No. 16).

Carrington filed the Motion on March 22, 2013, supported by the Declaration of his counsel, Laura J. Walker. See Docket Nos. 23 and 24. In substance, the Motion argued that Loverin Ranch's chapter 12 case should be dismissed because it was not properly authorized, in that Loverin Ranch was an Oregon partnership, and unanimous consent of the partners was required to authorize a bankruptcy filing in behalf of the partnership. Carrington argued that not all Loverin Ranch partners consented to its chapter 12 filing. On March 25, 2013, Carrington filed an objection to confirmation of the Plan, coupled with a motion for continuance of the confirmation hearing to allow time for further investigation/discovery. See Docket No. 26. A preliminary hearing on the Motion was scheduled at the same time as the confirmation hearing. See Docket No. 29.

---

[2] I have taken judicial notice of the docket and documents filed in Loverin Ranch's chapter 12 case for purposes of confirming and ascertaining facts not reasonably in dispute. Federal Rule of Evidence 201; In re Butts, 350 B.R. 12, 14 n.1 (Bankr. E.D. Pa. 2006).

Page 2 - MEMORANDUM OPINION

At the hearing on April 1, 2013, I determined that the Motion needed to be resolved prior to hearing issues with respect to confirmation of the Plan. Accordingly, I authorized the parties to engage in discovery; I set a deadline of May 6, 2013, for pre-Hearing submissions; I scheduled the Hearing for May 13, 2013; and I waived the forty-five day rule for chapter 12 confirmation hearings in this case for cause, as authorized by § 1224. See Docket No. 31.

In deciding the Motion, I have carefully considered the parties' submissions, all exhibits admitted at the Hearing, the testimony of Lynne and of Lee Loverin ("Lee"), and the arguments of counsel. At the conclusion of the Hearing, I closed the evidentiary record.

## Discussion

Prior to 2002, Rule 1004(a) provided that a voluntary bankruptcy petition for a partnership could be filed only with the consent of all general partners. See Goldberg v. Rose (In re Cloverleaf Properties), 78 B.R. 242, 244 (9th Cir. BAP 1987). However, the Bankruptcy Rules Committee of the Judicial Conference of the United States, recognizing that no substantive provision of the Bankruptcy Code specified the manner in which a partnership could commence a voluntary bankruptcy case, amended Rule 1004 in 2002 to eliminate the unanimous general partner consent requirement for a voluntary partnership bankruptcy filing. See Advisory Committee Note to 2002 amendments to Rule 1004; In re Century/ML Cable Venture, 294 B.R. 9, 24 (Bankr. S.D.N.Y. 2003). Accordingly, whether a voluntary bankruptcy filing has been properly authorized is determined consistent with applicable nonbankruptcy, i.e., state law. See, e.g., Advisory Committee Note to

Page 3 - MEMORANDUM OPINION

2002 amendments to Rule 1004; In re SWG Assocs., 199 B.R. 557, 559-60 (Bankr. W.D. Pa. 1996).

At the time that the Motion was filed, there was some question as to what kind of partnership entity Loverin Ranch is, a general partnership or a limited partnership. The Loverin Ranch partnership agreement, as amended ("Partnership Agreement"), identifies certain partners as "General Partners" and others as "Limited Partners." See Exhibit 1, p.2. Paragraph 15 of the Partnership Agreement provides:

> No limited partner shall be personally liable for any of the debts of the partnership, or any of the losses thereof beyond the amount originally contributed by him, except for the debts existing or the debts incurred in the initial formation of the partnership structure with the P.C.A., F.H.A. or other lending institutions or extensions thereof.

However, under Oregon law, in order to form a limited partnership, a certificate of limited partnership including certain required information "<u>must</u> be executed and submitted for filing to the Office of Secretary of State." ORS § 70.075(1) (emphasis added). The limited partnership is not actually formed until the Oregon Secretary of State files the limited partnership certificate. ORS § 70.075(2). At the Hearing, the parties conceded that no limited partnership certificate ever was prepared or filed for Loverin Ranch. They agreed, as do I, that Loverin Ranch should be treated as an Oregon general partnership in this case.

Filing a voluntary bankruptcy case is a paradigm action outside the ordinary course of partnership business. See, e.g., In re Century/ML Cable Venture, 294 B.R. at 27 and 28 n.27; In re SWG Assocs., 199 B.R. at 559:

Page 4 - MEMORANDUM OPINION

> The filing in this case of a Chapter 11 petition in bankruptcy, which has as its purpose the reorganization of the affairs of a debtor, cannot, in good conscience, be viewed as an act whereby the 3 petitioning partners in this partnership debtor sought to carry on its business in the usual way. Such a conclusion is mandated by the relief sought by petitioners in a Chapter 11 case, which is anything but the normal process by which an entity conducts its business.

In determining whether Loverin Ranch's chapter 12 filing was properly authorized, two provisions of Oregon general partnership law, ORS §§ 67.005-67.365, are particularly relevant. ORS § 67.140, entitled "Partner's rights and duties," subparts 7 and 11 provide as follows:

> (7) Each partner has equal rights in the management and conduct of the partnership business.
> . . .
> (11) A difference arising as to a matter in the ordinary course of business of a partnership may be decided by a majority of the partners. <u>An act outside the ordinary course of business of a partnership</u> and an amendment to the partnership agreement <u>may be undertaken only with the consent of all the partners</u>.
> (Emphasis added.)

ORS § 67.140(11) states the general rule that actions outside the ordinary course of partnership business can only be undertaken in behalf of the partnership with the consent of <u>all</u> partners.

ORS § 67.015(1) provides a counterweight to the general rule, stating, with exceptions not relevant in this case, "relations among the partners and between the partners and the partnership are governed by the partnership agreement." Neither the parties nor I have been able to find any Oregon authorities interpreting the subject provisions of ORS § 67.140(7) and (11) and 67.015(1) in this or a similar context. However, there is nothing in the language of the Oregon general

Page 5 - MEMORANDUM OPINION

partnership law that would preclude partners from providing in their partnership agreement that decisions outside the ordinary course of business could be made with less than unanimous consent of the partners. In this case, the question is whether the Partnership Agreement in fact provides for approval of a voluntary bankruptcy filing on less than unanimous consent of the partners. I find that it does not for the following reasons.

Exhibit 2 incorporates a series of resolutions ("Resolutions") purporting to authorize and implement a chapter 12 filing in behalf of Loverin Ranch. Its preamble states: "The undersigned partner on behalf of [Loverin Ranch] . . . does hereby take the following action by consent of the partnership." The Resolutions are signed by Lynne and dated effective November 19, 2012, the date of Loverin Ranch's bankruptcy filing. The Resolutions have all the earmarks of professional preparation to document the decision of the Loverin Ranch partners to authorize a chapter 12 filing in behalf of the partnership. I note that no evidence was presented at the Hearing 1) that the Loverin Ranch partners kept a "minute book" of partnership minutes or resolutions or 2) that any minutes or written resolutions had been prepared previously by the Loverin Ranch partners to document approved partnership actions.

In the Partnership Agreement, Lee is designated as both a general and a limited partner of Loverin Ranch. <u>See</u> Exhibit 1, p.2. In his Declaration filed in support of the Motion and in his testimony at the Hearing, Lee testified that he did not consent to a voluntary chapter 12 bankruptcy filing in behalf of Loverin Ranch. <u>See</u> Docket No. 45, p.1. Based on this evidence, I find that not all Loverin Ranch partners

Page 6 - MEMORANDUM OPINION

consented to its chapter 12 filing.

Contrary to the argument of Loverin Ranch's counsel, the Partnership Agreement does not generally provide "that a majority of the votes will control the decisions of the partnership." Loverin Ranch Memorandum in opposition to the Motion, Docket No. 40, p.4. However, the Partnership Agreement contains several specific provisions that allow decisions outside the ordinary course of the partnership's business to be made by majority vote.

For example, Paragraph 8 of the Partnership Agreement provides that, "The capital contributions of the limited partners shall be upon the following terms: . . ." and subparagraph 8.2 thereafter provides:

> The capital accounts of the limited partners shall be expressed in terms of limited partnership shares which shall consist of 683,000 shares of Class A limited partnership shares and 57,000 shares of Class B limited partnership shares. <u>Each share shall have one vote, with a majority vote controlling</u>. (Emphasis added.)

Embedded as it is in a Partnership Agreement paragraph expressly relating to limited partner capital contributions and capital accounts, subparagraph 8.2 is an unlikely vessel to provide that all partnership decisions are to be made by majority vote of the partners. The subject statement in context lends itself more to the interpretation that each limited partner share will have one vote, and among the limited partners, a majority vote will control in relation to partnership decisions on capital contributions and capital accounts.

That interpretation is reinforced by the provisions of Paragraphs 9 and 11 of the Partnership Agreement. Paragraph 9 provides that, "The limited partners shall receive the distribution of the profits

Page 7 - MEMORANDUM OPINION

and losses of the partnership as determined by a majority vote of the general partners." Paragraph 11 provides that:

> The general partner or partners shall have no interest in the income or capital of this partnership except as expressed below: <u>The general partner or partners may receive such reasonable salary as may be from time [to] time agreed upon by a majority vote of the respective shares of the general and limited partners. The remaining income of the partnership shall be divided among the limited partners as determined by a majority vote of the general partners</u>. (Emphasis added.)

There are no other partner voting provisions in the Partnership Agreement. There is no provision in the Partnership Agreement generally authorizing the partners to make decisions outside the ordinary course of partnership business by majority vote, and there is no specific provision authorizing the partners to approve a voluntary bankruptcy filing by majority vote of the partners.

Counsel for Loverin Ranch argued that even if the Partnership Agreement itself did not clearly provide that partners could make decisions outside the ordinary course of Loverin Ranch's business by majority vote, the course of conduct of Loverin Ranch's business historically must lead to the conclusion that the partners had agreed that all business decisions for the partnership, whether in or outside the ordinary course, would be made by majority partner votes.

Lynne testified, consistent with the Partnership Agreement, that the partnership was formed in 1984. <u>See</u> Exhibit 1, p.8. Yet, the only partnership decision outside the ordinary course of its business that Lynne could identify specifically in her testimony that was made without the consent of all partners was the 2003 decision to enter into

Page 8 - MEMORANDUM OPINION

the $250,000 loan transaction with Carrington.[3]  See Exhibit 5.

As a bottom line matter, the Partnership Agreement does not contain any provision authorizing the Loverin Ranch partners to make decisions, including the decision to file a voluntary chapter 12 bankruptcy in behalf of the Partnership, outside the ordinary course of partnership business by majority vote of the partners.  Even if that lack could be supplemented by evidence as to a consistent historical pattern of outside the ordinary course decision making by a majority of the partners, one or possibly two outside the ordinary course decisions over the approximately thirty year life of the partnership do not establish a sufficient pattern to justify departing from the general statutory presumption set forth in ORS § 67.140(11) that acts outside of the ordinary course of the partnership's business "may be undertaken only with the consent of all of the partners."

Since Loverin Ranch's chapter 12 filing was not properly authorized with the consent of all of the partners, I conclude that I must grant the Motion.

## Conclusion

Consistent with the foregoing discussion of relevant facts and the applicable law, I will grant the Motion.  An order dismissing Loverin Ranch's chapter 12 case will be entered contemporaneously with this Memorandum Opinion.

---

[3] Lynne also generally identified the 1992 loan transaction with the Farm Services Administration ("FSA") of the U.S. Department of Agriculture (see Exhibit 6).  However, it was not clear from her testimony that the FSA financing transaction was entered into without the consent of all Loverin Ranch partners.

Page 9 - MEMORANDUM OPINION

###

cc:     Virginia Andrews Burdette
        Keith D. Karnes, Esq.
        Holly R. McLean
        Jonel K. Ricker
        U.S. Trustee
        Laura J. Walker, Esq.

Page 10 - MEMORANDUM OPINION